# Williams v. Theodore Q. Thompson Associates

C.P. of Montgomery County, nos. 06-05173 and 0647816.

*Charles J. Schleifer,* for plaintiff.
*Theodore Q. Thompson,* for defendants.

SMYTH, *J.,* August 5, 2010—On July 27, 2010, we conducted the third in a series of proceedings in open court and heard oral argument on the *third* motion of Charles J. Schleifer, Esquire, to withdraw as plaintiff's counsel in these consolidated actions for legal malpractice. We denied counsel's first two motions to withdraw, without prejudice to renewal should good cause for withdrawal under Pa.R.P.C. 1.16(b) be shown. We also ordered on each of those two prior occasions that plaintiff pay all costs and expenses of litigation going forward, absent agreement by the parties to the contrary. Specifically, in our second order denying withdrawal without prejudice, entered January 7, 2010, we directed plaintiff, within 60 days, to pay to counsel, and submit to the court proof of payment of, the sum of $4,700, representing amounts he had demanded under our first order for: (i) $ 1,200 for a medical exam and preparation of a report by a medical expert; and (ii) $3,500 for review of the file and preparation of a report by a legal expert. The second order came with the proviso that failure to provide proof of payment of the stated amount within 60 days would constitute good cause for withdrawal and result in the court's granting leave to withdraw without further notice.

Plaintiff did not file proof of payment as the order required. Instead, she filed a motion to reconsider our second order. We did not rule on the motion, allowing the 60-day period for compliance with the order to run. Cf. *Stephens v. Messick,* 799 A.2d 793, 801 (Pa. Super. 2002) ("A motion for reconsideration appeals to the court's discretion . . . . Normally, motions for reconsideration expire on their own . . . .").

After the running of the 60-day period for payment allowed by the order, on March 11, 2010, Schleifer filed his third motion to withdraw as counsel, pleading the fact that payment had not been forthcoming as the order required. Counsel also answered plaintiff's motion for reconsideration. Plaintiff filed separate replies to counsel's answer to her motion for reconsideration, and to his third motion to withdraw as counsel, and the matter was joined and the July 27 proceeding scheduled and held.

At the hearing, plaintiff again presented her position that, among other things, counsel should not be allowed to withdraw because her and counsel's original agreement as to contingent fees in the underlying actions provided that he, not she, was to be responsible for costs of litigation. Thus, she argued, as she did in her motion for reconsideration of our order on counsel's *second* motion to withdraw, that the parties "have made" an agreement providing for counsel's payment of costs, and therefore under our order on counsel's *first* motion to withdraw, counsel, not she, was liable for all costs of litigation, despite our specific declaration in the order on the second motion to withdraw that she was to pay him the amount of $4,700 within 60 days of the date of the order, January 5, 2010. Thus, in response to the third motion to withdraw, plaintiff sought to litigate again the meaning of the

agreement, which we had for a second time reviewed and decided did not support her position before ruling on the second motion to withdraw and ordering her to pay counsel the initial costs of the medical and legal experts that would be necessary for the underlying actions in legal malpractice to go forward.

An additional theme of plaintiff's written materials, which she did not specifically pursue and we did not explore extensively at the hearing, was that counsel had not duly diligently investigated the various names or aliases of defendant(s) in the underlying actions, Theodore Q. Thompson & Associates, before determining that the latter had insufficient assets upon which to recover even should the underlying actions eventually prevail. Thus goes the argument, which we have also previously considered and ruled upon unfavorably to plaintiff's position, counsel should not be allowed to withdraw because his conclusion that defendants are basically judgment-proof and any potential recovery in the actions cannot justify the expense of pursuing them is erroneous and faulty.

Plaintiff also at the hearing, which we had stenographically recorded, reiterated her theme that counsel had made willfully false statements to the court in his various motions, particularly in stating that plaintiff was a paralegal and thus (presumably) able to represent herself in court, when in fact counsel knew she had not been employed as a paralegal for some 20 years. In her written rebuttal to counsel's response to her motion for reconsideration of this court's order on counsel's *second* motion to withdraw as counsel, plaintiff went even further, stating:

"Clearly Charles Jay Schleifer, Esquire[,] has misrepresented a material fact to the court. Plaintiff respectfully requests the court strike plaintiff's counsel's motion from the record. *In the alternative, this should be referred to the Montgomery County District Attorney's Office for review.* Evidence exists in the form of court transcripts that Schleifer had been informed that his client is not a paralegal by profession. Yet counsel has chosen to make that statement over-and-over again even though he has been confronted with evidence as to the falsity of his words. In addition, *the statements may also be potential violations of the Rules of Professional Conduct and therefore The Disciplinary Board of the Supreme Court of Pennsylvania must be notified.*

"The simple fact remains, Schleifer had the right of refusal and had every opportunity to perform a due diligence search of the defendants before he entered into a legal and binding contract with the plaintiff. The plaintiff should not be penalized for her counsel's *precipitous and greedy behavior*." (Rebuttal pl.'s counsel's resp. pl.'s mot. reconsider order Jan. 5, 2010, 11-12.) (emphasis added)

At the hearing, plaintiff retreated from the strong wording of her verified rebuttal to counsel's response to her motion for reconsideration, and said that, although counsel had repeatedly misstated her position as a paralegal, she still trusted him to steward this litigation and wanted him to remain as her counsel.

We now clarify that any statements by counsel about plaintiff's present or former status as a paralegal were *not* material to any of our previous orders ruling on the motions to withdraw as counsel, and are not germane to

our present inquiry whether counsel has satisfied the standards for withdrawal from the case with court permission under Pa.R.P.C. 1.16(b)-(c) and Pa.R.C.P. 1012(c)-(d). However, if counsel indeed mistook that plaintiff continued to be a paralegal, any mistake may have arisen from the quality of presentation of the various motions and answers she filed on her own in this proceeding, which display above-average legal acumen for a person not licensed to practice law.

Returning to the nut of the matter, after our third hearing, we again revisited, for the fourth time (the previous three times having been after receiving counsel's three respective motions to withdraw), the agreement as to contingent fees that plaintiff and her counsel entered into in pursuit of the underlying actions for legal malpractice. We note first that the contract, which appears to be a form used by counsel's law firm, states that it is to constitute and appoint Charles Schleifer (the name is handwritten in) "as my (our) attorney to prosecute a claim for personal injury and/or property damage against Theodore Thompson et al. [name handwritten in]." (Eisenberg Rothweiler Schleifer Weinstein Winkler para. 1.) Of course, the claim against Theodore Thompson is for legal malpractice, not for direct personal injury and/or property damage as the form indicates. Following is a passage with the name of the claimant (plaintiff) handwritten in stating the cause of action arose on six separate dates (handwritten in), which, the court sunrises, are the dates of six separate auto accidents underlying the claims for which plaintiff originally retained Thompson to represent her. The text of the provision over which all the controversy in the present case has swirled is as follows:

"Out of whatever sum is secured by my/our attorney or by me/us from the above defendant, either by way of settlement or verdict, the said attorney, for and in consideration of the professional services to be rendered by him/her in the investigation, institution and general conduct of the said case shall retain or be entitled to 40 percent out of the *net* amount after deduction of costs, which include all out-of-pocket expenses, including interest actually paid by the firm (at the prevailing rate) on those costs, incurred by my/our attorney in representing me/us in this matter. It is further understood that if my/our attorneys decide at some future time, for whatever reason, that they do not wish to continue representing me/us, I/we will not object to allowing my/our attorneys to withdraw from the case, without prejudice to them. . . . If there is no recovery on my/our behalf, my/our attorneys will pay all costs of litigation including interest. There will be no charges to me/us, and they will not seek anything from me/us." (Eisenberg Rothweiler Schleifer Weinstein Winkler para. 2.)

After the hearing on counsel's *first* motion to withdraw, we entered an order denying the motion without prejudice to counsel's again moving to withdraw should good cause under Pa.R.P.C. 1.16(b) exist or arise, specifically finding that the clause in the contract, "It is further understood that if my/our attorneys decide at some future time, for whatever reason, that they do not wish to continue representing me/us, I/we will not object to allowing my/our attorneys to withdraw from the case, without prejudice to them," was not in the spirit of the rule, which enumerates six specific grounds upon which counsel may withdraw from representing a client, followed by a catchall permitting withdrawal if "other good cause for with-

drawal exists," Pa.R.P.C. 1.16(b)(7). We found that the clause in the contract permitting counsel to withdraw "for whatever reason" did not satisfy the "good cause" standard of the rule, without, however, expressly determining counsel could not, in fact, meet that standard in the circumstances of the case.

We then penned the fateful language, *"Unless counsel and plaintiff have made or make an agreement in writing to the contrary,* from this point forward plaintiff shall be solely responsible for all court costs and expenses of litigation within the meaning of Pa.R.P.C. 1.8(e)." (emphasis added) (Order, May 19, 2009.) With this provision placing the costs and expenses of litigation squarely on the client, we meant to address counsel's stated concerns that, given the questionable financial status of defendants as determined by counsel, the cost of pursuing this litigation would probably far outweigh any potential recovery from them even should the cases against defendants ultimately succeed, and it would be grossly unfair to place on his shoulders alone the substantial costs of continuing to pursue the litigation against his own wishes and professional judgment. Cf. Pa.R.P.C. 1.16(b) (6) ("[A] lawyer may withdraw from representing a client if: . . . (6) the representation will result in an unreasonable financial burden on the lawyer . . . ."). We included the emphasized language, *"[u]nless counsel and plaintiff have made or make an agreement in writing to the contrary,"* only to clarify that we were not barring counsel and plaintiff from freely contracting between themselves should they come to a different agreement for sharing costs, nor were we deciding as a fact that they had never before made such an agreement. What we were *not* doing was finding as a matter of law that the language

of the agreement quoted above had placed on counsel the burden of paying all costs of litigation in advance.

Following the first order counsel, in accordance with its terms, demanded that plaintiff pay certain enumerated costs necessary to resume the litigation. She did not do so, whereupon, after a reasonable period, counsel filed his *second* motion to withdraw, pleading nonpayment. Plaintiff filed her response, and we convened another hearing in open court. In ruling on the *second* motion, we decided to be more specific as to the directive motivating our first ruling, that counsel would not be required to continue his representation in the matter unless plaintiff bore the costs of litigating it. We ordered, "plaintiff shall again be solely responsible for all court costs and expenses of litigation within the meaning of Pa.R.P.C. 1.8(e)." (Order, January 7, 2010.) We then specifically ordered that within 60 days she pay certain amounts laid out in counsel's motion, totaling $4,700, representing the initial costs of retaining the services of medical and legal experts, whose reports, opinions, and testimony would be indispensable to the prosecution of these actions in legal malpractice (which, by extension, would require proof of the merit of and the amount of damages in the underlying auto-accident actions in which defendants allegedly committed the malpractice). We further ordered her to pay within a reasonable time all other reasonable costs demanded by counsel. We stated that failure to comply with the directive to pay the $4,700 within 60 days and to file proof of payment thereof with the court "shall constitute good cause and result in the court's granting leave to withdraw without further notice" (order, January 7, 2010) and that failure to comply with a demand to pay further reasonable costs would be

grounds for withdrawal upon further motion. Indeed, we found that requiring counsel to continue representing plaintiff while financing these costs necessary to litigation in which, in his professional judgment, there was little hope of recouping them, let alone recovering for his client, would be an intolerable imposition on the practice of law and an abuse of judicial discretion.

We now specifically address the provision of the agreement, which, according to plaintiff, shifts to counsel the responsibility to pay all costs of litigation, so that, under our first order, the parties "have made" an agreement for counsel to pay all costs and he remains liable for them, despite the specific proviso of our second order directing plaintiff to advance counsel sums for payment of medical and legal experts. We do not read the agreement as requiring counsel to pay all costs of litigation until the case is tried to conclusion. Rather, we interpret the clause, "*If there is no recovery on my/our behalf* my/our attorneys will pay all costs of litigation including interest," to mean that *if* the case is tried to conclusion *and* is unsuccessful in achieving a recovery, the attorneys would be responsible for the costs—just as, under the immediately preceding clause, if there *was* any recovery at the conclusion of the case, the attorneys would be entitled to 40 percent of the *net* amount after deduction of costs, including all out-of-pocket expenses incurred by the firm. We do not interpret the clause to mean that if the attorneys determine in the course of the litigation that defendants are judgment-proof and there is no hope of recovery against them even should plaintiff win a judgment, the attorneys must continue to lay out all the substantial costs necessary to litigate a claim of legal malpractice to a

judgment with no expectation of recouping the costs, let alone any monetary reward for the client.

Furthermore, we must read the agreement's provisions as to costs, inarticulately drafted as they may be, in light of the provision allowing counsel to withdraw from the case "*at some future time, for whatever reason.*" While we found in our order on counsel's first motion to withdraw that this provision was not, *read in isolation,* in the spirit of Pa.R.P.C. 1.16(b), which allows counsel to withdraw for certain enumerated reasons or for "other good cause," we did not either strike the provision of the agreement allowing counsel discretion to withdraw, or find as a fact that counsel did not then or at some future time would not have good cause under the rule to withdraw. Rather, we found that given counsel's stated concerns at that time that the necessary costs of litigating an expensive lawsuit in legal malpractice would far outweigh any expectancy of recovery, making his continued pursuit of the case contingent on plaintiff's payment of certain costs was a fair compromise of the provision that allowed his withdrawal "for any reason." In that event, plaintiffs failure to comply with our order requiring her to advance certain costs of the litigation *would* constitute good cause under the rule for counsel no longer to continue his representation in the matter. Indeed, it would be patently unfair and contrary to the intendment of the agreement read as a whole to deny counsel's request to withdraw, and yet require him to continue to advance costs of the litigation.

We now find, based on the papers filed of record and plaintiff's admissions in open court, that she has failed to comply with our two prior orders making counsel's continued representation contingent on her advancing to

him certain costs to keep the litigation alive. We further find, based on plaintiff's statements, that there is no reasonable prospect in the foreseeable future that she will be able to comply with our orders or advance the specific costs of retaining experts we directed her to pay. We also find that it would be unconscionable both under the parties' agreement construed in its entirety and under spirit of the Rules of Professional Conduct to require counsel to remain in this case while advancing the substantial costs of the litigation for which he sees little or no chance of recovery. That was the balance we sought to achieve in each of our two prior orders. Having finally come to the conclusion that that balance is impossible to execute, we will now finally grant counsel's request to withdraw (as, under our second order, we could have done without counsel's filing of a third motion based simply on plaintiff's failure to submit proof of payment of the costs specified in our second order).

Rule 1.16 (declining or terminating representation) gives this court discretion to grant counsel permission to withdraw from representation where the representation will result in an unreasonable financial burden on the lawyer . . . ." Pa.R.P.C. 1.16(b)(6). We find as a fact and as a matter of law that requiring counsel to continue his representation in this matter without plaintiff's advancement of certain costs of the litigation would result in an unreasonable financial burden on him, and that therefore we should allow hitn to withdraw under that provision of the rule.

We also find that plaintiff's suggestions that, for stating to the court that plaintiff is a paralegal, counsel should be referred both to the Montgomery County District Attorney's Office and to the Pennsylvania Supreme

Court's Office of Disciplinary Counsel bespeak a deterioration of the relationship between client and counsel justifying counsel's withdrawal from the case for "other good cause" under Pa.R.P.C. 1.16(b)(7). (We, incidentally, find nothing in counsel's statements or conduct in the case that would warrant referring him to the district attorney or disciplinary counsel, and this court will make no such referral.)

We hereby *order* as follows: (1) Counsel's third petition to withdraw is *granted* pursuant to Pa.R.C.P. 1012(c)-(d). (2) The prothonotary shall enter this order in the docket and give written notice thereof pursuant to Pa.R.C.P. 236(a)(2)-(b), to all parties, including plaintiff herself, using as her addresses *both* that reflected on the official dockets of this court (1959D Cabernet Place, Easton, PA 18045), *and* that given in her letter to this judge covering a copy of her rebuttal to counsel's response to her motion to reconsider (1808A Merlot Drive, Easton, PA 18045), although, contrary to the requirement of Pa.R.C.P. 1025, the latter address is endorsed on neither the rebuttal itself filed with the prothonotary, nor on any of the other papers she herself filed in this court.